### Eagle Iron Works Company, Appellee, v. Franklin County Collieries Company and T. C. Keller, Appellants.

1. MECHANICS' LIENS—*weight of evidence.* Where on a bill for mechanic's lien, alleging that in pursuance of a certain contract complainant constructed machinery for hoisting and loading coal for defendant who refuses to pay the balance due thereon, a cross-bill is filed alleging the machinery was inadequate and not adapted to the purposes for which it was installed, a decree for complainant will be reversed where the evidence shows the machinery was imperfect and had to be replaced at considerable expense.

2. RECOUPMENT—*where machinery furnished is not according to the contract.* Where complainant files a bill for a mechanic's lien on certain machinery constructed for defendant, the fact that defendant has received and used the machinery does not prevent it from recouping damages if the machinery was not built according to the contract.

3. MECHANICS' LIENS—*set-off and counterclaims.* In an action to enforce a mechanic's lien an owner is entitled to make any de-

Eagle Iron Works Co. v. Franklin County C. Co., 180 Ill. App. 76.

fense against the contractor by way of set-off, recoupment, or counterclaim that he could in any action at law.

Appeal from the Circuit Court of Franklin county; the Hon. Enoch E. Newlin, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed April 23, 1913.

Underwood & Smyser, for appellants.

Hart & Williams and Moses Pulverman, for appellee.

Mr. Presiding Justice McBride delivered the opinion of the court.

The Circuit Court of Franklin county rendered a decree in favor of the complainant herein, and to reverse such decree the defendant prosecutes this appeal.

On September 5, 1907, complainant filed its bill for mechanic's lien in the office of the clerk of the Circuit Court of Franklin county, alleging that it was a contractor and builder and that on October 8, 1906, the defendant, Franklin County Collieries Company, entered into a contract with appellee for the erection of certain machinery upon the S. W. ¼ of the N. E. ¼ of section 19, T. 5 S., R. 2 E. of the third principal meridian in Franklin county, and that one Theodore C. Keller was at the time the owner of said lands and of a majority of the stock in said defendant corporation. The bill further alleges that in pursuance of said contract the complainant did erect for the defendants on said premises one pair of double pivoted self dumping cages, one dumping chute, one weigh hopper, one double deck shaking screen, one eccentric shaft, one twenty-five horse power engine, one four compartment receiving hopper, one bar screened with apron, slack hopper for mine run chute, one wagon chute, one bar screened with aprons, slack hopper for wagon chute; that the defendant Franklin County Collieries Company agreed to pay therefor $3,800, one-third

when the machinery was shipped, one-third when erected and ready for operation, and the balance in 45 days thereafter. That the defendant on the 5th day of August, 1907, took possession of said machinery and has used the same ever since; that defendant has paid to complainant the sum of $500 upon said contract and that there is a balance due of $3,291, with interest. That on December 25, 1907, defendants filed an answer to said bill admitting that the defendant corporation entered into a contract with the complainant for the erection of said machinery but denies that the complainant built and completed the said machinery according to the terms of said contract, and avers that the machinery was planned and designed by the complainant for the purpose of caring for coal hoisted from defendant's mine and that the complainant prepared all of the details of said work and assumed the responsibility therefor. That the complainant without any fault of defendants failed to complete such equipment according to the terms and conditions of said contract, and that the equipment furnished by the complainant was so inadequate and imperfect as to be incapable of use and that it would be necessary for defendants to remove such equipment and place new machinery therein. That the complainant by its said contract guarantied the material, workmanship and operation of the machinery to be first-class and that it was not in compliance with said guarantee, not adapted to the purposes for which it was erected and that by reason of the failure of complainant to comply with its contract in the erection of said machinery the defendant has been greatly damaged, and denies that the defendant is indebted to the complainant and asks that an account may be taken of the damages sustained by the defendant and a decree rendered against complainant for such amount, and denies that it is in any manner indebted to the complainant.

Thereafter the defendants filed a cross-bill in said

cause alleging substantially the same matters as are set forth in the answer and asks the court to direct an accounting of the damages sustained by it and for a decree in its favor. Thereupon the cause was referred to the master in chancery to take the testimony, which was taken by the master and reported to the court at a later term. Thereafter the defendants procured a change of venue from the judges of said circuit. On December 15, 1910, the defendant entered a motion to amend its answer by averring that the complainant was a foreign corporation and not authorized to transact business or bring suit in Illinois upon contracts entered into in said state, and averring' that such contract was entered into in the state of Illinois. Objections were made to the allowance of said amendment and the matter was taken under advisement by the court. Afterwards on June 15, 1911, a stipulation was entered into and filed by the parties to this suit asking that the order for change of venue heretofore made be set aside and that the presiding judge, Honorable W. H. Green, decide the case upon the record as made and render such decree as in his judgment should be made therein. That afterwards on December 15, 1911, a similar agreement was entered into between the parties with reference to a hearing and decision upon the evidence that had been taken and reported by the master, and agreeing that said cause should be taken and determined by the Honorable E. E. Newlin, presiding judge.

It is claimed that the court erred in not dismissing complainant's bill because the complainant was a foreign corporation and had not taken proper steps to authorize it to transact business in Illinois.

We are of the opinion that according to the facts as stated in the stipulation filed in this case the plaintiff does not come within the rule which prohibits foreign corporations from transacting business or exercising its corporate powers in this state.

Many errors have been assigned herein but under

80    APPELLATE COURTS OF ILLINOIS.

Eagle Iron Works Co. v. Franklin County C. Co., 180 Ill. App. 76.

the view we take of this case it is only necessary to consider the errors pertaining to the question of the right of complainant to recover the full amount of its claim, its failure to complete its contract according to agreement, the right of defendant to recoup damages, and the right of the court to dismiss defendants' cross-bill. As the solution of these questions depends upon our view of the evidence, they will all be considered and determined together.

It is admitted that the contract upon which this action is based was prepared by the agents of the complainant, after consultation with the agents of the defendant corporation. In the negotiations leading up to the making of the contract, and in the performance of it, George Parker represented the complainant and T. C. Keller the defendant corporation. Prior to entering into the contract Keller advised Parker that he desired to sink a mine upon the premises in question and wanted to make it of a capacity of two thousand tons, or more, in eight hours, and that he wanted cages, screens, dumps and other machinery of sufficient capacity and strength and durability to hoist and properly screen the coal and to bring it into a four compartment receiver hopper, preparatory to loading it. That he was not experienced in such matters of machinery and left the matter to Mr. Parker to determine what would and what would not be feasible to accomplish this purpose, and in pursuance and for the purpose of accomplishing the objects proposed by Mr. Keller, Mr. Parker prepared the contracts, specifications and details and represented that the machinery specified in the contract would be sufficient to accomplish the object sought to be obtained by Mr. Keller, and in the preparation of the contract Mr. Parker inserted a clause guarantieing the material, workmanship and operation of the machinery to be first-class. The real question here is, Was the machinery of the character, durability and quality

contracted for, and was the machinery and its operation first-class?

The evidence in this cause is quite voluminous and we will not undertake to consider it in detail. The chancellor did not hear the witnesses testify nor see them upon the stand but arrived at his conclusions in the same manner pursued by this court, by an examination of the record of the testimony. The complainant seeks to establish its cause of action by showing that the machinery in question was delivered upon the ground and put up and used by appellant in the hoisting and screening of coal, and introduced several witnesses who claim to have been present for a short time on two or three different occasions, who testified that the machinery appeared to be working all right upon those occasions, but we do not think that these witnesses made as careful an examination of this machinery as they should have done or that they even examined all of it. Their attention was confined principally to the screen, and it was developed by cross-examination of Mr. Parker, and some other of complainant's witnesses, that there was some doubt in their minds about the machinery being of the proper capacity, strength and durability, or being properly placed; besides, at the time they examined the machinery the mine was not hoisting to exceed six hundred tons. Mr. Parker or any of his witnesses do not deny but what the screen clogged badly, that the drop caused a large amount of breakage in the coal, that the cages were weak, and in fact did not successfully dispute any of the particular defects claimed by the defendants. Mr. Parker says, "I noticed the coal break in dropping into the cars, the drop caused a large amount of breakage. I think the screen is higher than necessary, probably thirty inches." He admits that the coal clogged between the decks of the screen, but he thought that due to the size of the perforations. At all events he admits that the coal was not all properly screened.

We think the evidence in this case shows that the decree of the court is manifestly against its weight, as the evidence of several witnesses for defendant, many of whom worked with the machinery and were familiar with it, shows that the screen was located too high from the ground, that it produced an excessive drop and breaking, that it had too much pitch, that the coal ran rapidly across the screen without getting the dirt or smaller coal out of it; that when the coal was loaded upon the cars it was shown to contain a great deal of dirt, small coal that ought not to be there if properly screened; that the coal overflowed in the screen; that the eccentric rods used for driving the screen were too light, crooked, and that the design of the screen would not permit the use of straight rods which ought to have been used; that on account of the faulty construction the screen was out of repair very frequently and caused a great deal of loss of time by such breakage. The cages furnished were, as the evidence disclosed, weak; it became necessary to often repair, rivet and bolt them. Many of the witnesses say they were not fit to ride upon and that by reason of the light material that was used in the construction of the cages they were wholly unfit for the purpose of defendant. Some of the witnesses say the cages wobbled when they were riding upon them, some of the witnesses said they climbed up from the bottom rather than ride upon the cages. When the cages arrived, Jordan, the mine manager, condemned them before they were removed from the railroad cars and claimed they were too light but Mr. Parker said, "Give them a chance, they are plenty heavy enough;" but we think the evidence shows very clearly that they were not heavy enough to perform the work and by reason of getting out of repair frequently much time was lost in repairing them and the cages were finally set aside and other cages purchased to take their place. Many other imperfections in the material furnished by appellee are pointed out, and, we think,

fairly well sustained by the evidence. It develops that most of the machinery had been replaced with other machinery at a considerable expense. We are of the opinion that much of the machinery furnished by complainant was weak, defective and not adapted to the purposes for which it was purchased. While it is true as suggested by counsel for appellee, that a substantial compliance with a contract is all that is required, we believe that under the evidence as disclosed herein that complainant has failed to show a substantial compliance.

The fact that appellant received and used the machinery would not prevent it from recouping damages if the machinery was not built according to the contract entered into. *Hyde v. Love.Bros.*, 63 Ill. App. 43; *O. H. Jewell Filter Co. v. Kirk*, 200 Ill. 382.

While we doubt if the complainant has, by the evidence, as appears in this record, shown such a compliance with its contract as would entitle it to enforce a lien, yet as it appears from the answer and the cross-bill filed by the defendant herein, that they are seeking to recover damages for failure to comply with the contract, we are disposed to remand this case for another trial, as it is provided by section 27 of chapter 82 of Hurd's Revised Statutes: "The owner shall be entitled to make any defense against the contractor by way of set-off, recoupment or counter claim that he could in any action at law, and shall be entitled to the same right of recovery on proof of such in excess of the claim of the contractor against the contractor only.   *   *   *   And in event that the court shall find in any proceeding in chancery that no right to a lien exists, the contractor shall be entitled to recover against the owner as at law, and the court shall render judgment as at law, for the amount which the contractor is entitled, together with costs in the discretion of the court."

It is disclosed by the evidence in this case that the defendant has retained possession of and is using a

84    APPELLATE COURTS OF ILLINOIS.

Hobson v. St. Louis, Springfield & Peoria R. Co., 180 Ill. App. 84.

portion of the machinery furnished and because of this fact and of the claim of the defendant for damages the case will have to be remanded for another trial had in accordance with the views herein expressed.

We are further of the opinion that the court erred in dismissing defendants' cross-bill.

The decree of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*